UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____ :
                                        :
                                        :
HSQD, LLC,                              :
    Plaintiff,                         :
                                        :
                                        :
    v.                                 :   Case No.: 3:11-cv-1225 (WWE)
                                        :
PAUL MORINVILLE,                        :
    Defendant.                         :
                                        :
                                        :
_____ :

**MEMORANDUM OF DECISION ON DEFENDANT'S MOTIONS TO DISMISS**

    Plaintiff HSqd, LLC ("HSqd") brought this action for damages on August 3, 2011 against Defendant Paul Morinville.  Morinville filed motions to dismiss on November 8, 2011 for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure [Doc. No. 13] and failure to state a claim upon which relief can be granted under Rule 12(b)(6) [Doc. No. 14].  For the following reasons, Morinville's motions to dismiss for lack of personal jurisdiction [Doc. No. 13] and for failure to state a claim [Doc. No. 14] will be denied.

**I.**    **BACKGROUND**[1]

    HSqd is a Connecticut limited liability company with its principal place of business in Bloomfield, Connecticut.  (Compl. ¶ 2.)  HSqd works with and advises owners of intellectual property who are "seeking to monetize their assets."  (Compl. ¶ 8.)  Morinville is an individual residing in LaPorte, Indiana.  (Compl. ¶ 4.)  In January 2010, Morinville, the owner of various patents "ready to be asserted against companies collectively generating significant annual

---

[1] The following facts alleged in the Complaint are accepted as true for the purposes of this motion to dismiss and are stated in the light most favorable to HSqd.

infringement revenue" and pending patent applications (the "Patent Portfolio"), began communicating with HSqd about the potential monetization of his patents. (Compl. ¶ 10.) Through telephone and email conversations, HSqd and Morinville discussed the creation of a partnership for the purposes of monetizing the Patent Portfolio. (Compl. ¶¶ 11-15.)

During a conference call on January 13, 2010, the parties discussed the general terms of the partnership. (Compl. ¶¶ 13-14.) On January 25, 2010, HSqd sent Morinville's attorney an email to confirm Morinville's interest in forming a partnership with HSqd according to the terms discussed in the conference call. (Compl. ¶ 15.) Once Morinville's attorney conveyed Morinville's assent, the partnership was formed. (Compl. ¶ 16.)

A subset of the Patent Portfolio consisted of patents that arose out of Morinville's former employment with Dell Computer Corporation (the "Dell Patents"). (App. B to Compl. 1; see Compl. ¶ 17.) On February 3, 2010, Morinville's attorney sent HSqd a copy of an employment agreement between Dell and Morinville executed in 1997 and which contained terms governing the ownership of the Dell Patents. (Compl. ¶ 17.) Accordingly, the following day HSqd informed Morinville that, contrary to Morinville's belief, Dell was the owner of the Dell Patents. (Compl. ¶ 18.) Between February 2010 and May 2010, the parties developed negotiation strategies in order to obtain an assignment of the Dell Patents to Morinville. (Compl. ¶¶ 19-22.) On June 2, 2010, with HSqd's approval, Morinville signed a patent release agreement and assignment from Dell (the "Dell Release") and thereby acquired legal title to the Dell Patents. (Compl. ¶¶ 20-23.)

Even before obtaining an assignment of the Dell Patents, the parties, between May 2010 and January 2011, refocused their efforts on developing and implementing a monetization strategy for the Dell Patents. (Compl. ¶¶ 24-27.) By the end of January 2011, when the parties

were ready to execute the monetization program, Morinville notified HSqd that he intended to "walk[]" from the partnership. (Compl. ¶¶ 30-31.) Subsequently, Morinville sold or transferred the Dell Patents to one or more third parties without HSqd's knowledge or consent. (Compl. ¶¶ 32-33.) After learning of Morinville's sale through an online publication, HSqd initiated this action. (Compl. ¶ 16.)

## II.     STANDARD OF REVIEW

### a.     *Personal Jurisdiction*

Whether a court has personal jurisdiction over a non-resident defendant is determined by the law of the state in which the court sits, here Connecticut. Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994). When a defendant challenges personal jurisdiction, the court must perform a two-step analysis. Knipple v. Viking Commc'ns Ltd., 674 A.2d 426, 428-29 (Conn. 1996). First, the court must determine whether the state long-arm statute authorizes jurisdiction over the defendant. Id. Then, if the long-arm statute permits the exercise of jurisdiction over the defendant, the court must determine if the exercise of jurisdiction over the defendant violates constitutional principles of due process. Id.

When a defendant makes a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. Id. at 429 (citing Standard Tallow Corp. v. Jowdy, 459 A.2d 503, 507 (Conn. 1983)). Where, as here, the court has not conducted an evidentiary hearing, the plaintiff must only make a prima facie showing that the court possesses jurisdiction. DiStefano v. Carozzi N. Am. Inc., 286 F.3d 81, 84 (2d Cir. 2001). Such a showing must be made "by alleging facts, not simply conclusions," Vertrue, Inc. v. Meshkin, 429 F. Supp. 2d 479, 489 (D. Conn. 2006), but the court "construes jurisdictional allegations liberally and takes as true uncontroverted factual allegations,"

Robinson, 21 F.3d at 507 (internal citations omitted).  In addition, the court construes the evidence in the light most favorable to the plaintiff, resolving all doubts in the plaintiff's favor.  Cutco Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986).

    *b.*    *Failure to State a Claim*

A complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss, the court will "not ordinarily look beyond the complaint and attached documents."  Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011).  The court will accept "all well-pleaded allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor."  SEC v. Gabelli, 653 F.3d 49, 57 (2d Cir. 2011) (internal quotations and citation omitted).  In order to survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Facial plausibility requires that the court be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The plausibility standard, however, is "not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully."  Id.

### III.  DISCUSSION

    *a.*    *Personal Jurisdiction*

Morinville moves to dismiss, pursuant to Rule 12(b)(2), arguing that this Court lacks personal jurisdiction over him.  This Court concludes that it has personal jurisdiction over Morinville.

*i.*     *Long-Arm Statute*

This Court must first look to Connecticut's long-arm statute to determine if Connecticut law allows it to exercise personal jurisdiction over Morinville. Connecticut's long-arm statute provides, in relevant part, that "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent . . . [t]ransacts any business within the state." Conn. Gen. Stat. § 52-59b(a). The court concludes that Morinville transacted business in Connecticut within the meaning of the Connecticut long-arm statute.[2]

The long-arm statute does not define the term "transacts any business," but courts have construed "transacts . . . business" to embrace a single purposeful business transaction. Zartolas v. Nisenfeld, 440 A.2d 179, 180-81 (Conn. 1981). A plaintiff must show that the defendant, even though he was never physically in the forum state, "purposefully avail[ed] [himself] of the privileges of conducting activities within [the forum state], thus invoking the benefits and protections of its laws." Cutco, 806 F.2d at 365 (citation and internal quotation marks omitted) (interpreting New York Civil Practice Law Section 302).[3] In determining whether the defendant transacted business within the state, the court balances "considerations of public policy, common sense, and the chronology and geography of the relevant factors." Zartolas, 440 A.2d at 182. Courts can consider a variety of factors including "(i) whether the defendant has an on-going contractual relationship with a [Connecticut] corporation, (ii) whether the contract was

---

[2] Because this Court concludes that Connecticut's long-arm statute allows it to exercise personal jurisdiction over Morinville based on Morinville's transaction of business in Connecticut under section 52-59b(a)(1), this ruling does not address the parties' remaining arguments with respect to personal jurisdiction. In addition, it is undisputed that HSqd's claims arise out of Morinville's transaction of business in Connecticut.
[3] Connecticut courts consider judicial interpretation given to New York Civil Practice Law Section 302 relevant and persuasive authority. Zartolas, 440 A. 2d at 181.

5

negotiated or executed in [Connecticut] and whether, after executing a contract with a [Connecticut] business, the defendant visited [Connecticut] for the purpose of meeting with parties to the contract regarding the relationship, (iii) what the choice-of-law clause is in any such contract, and (iv) whether the contract requires [the defendants] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state." SS&C Techs., Inc. v. Providence Inv. Mgmt., LLC, No. 3:07-cv-484 (CFD), 2008 WL 691702, at *3-4 (D. Conn. Mar. 12, 2008) (quoting Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996)).

Courts have concluded that the negotiation or existence of a contract, standing alone, is insufficient to exercise personal jurisdiction over a defendant. Goudis v. American Currency Trading Corp., 233 F. Supp. 2d 330, 334-35 (D. Conn. 2002); see also Eljam Mason Supply, Inc. v. Donnelly Brick Co., 208 A.2d 544 (Conn. 1965) (holding that a corporation that drafted, but did not execute, a contract in Connecticut and received two deliveries of merchandise to a Connecticut address was not "transacting business"). Similarly, "[t]he transmission of communications between an out-of-state defendant and a [party] within the jurisdiction does not, by itself, constitute the transaction of business within the forum state." Bross Utils. Serv. Corp. v. Aboubshait, 489 F. Supp. 1366, 1371-72 (D. Conn 1980); see also Greene v. Sha-Na-Na, F. Supp. 591, 596 (D. Conn. 1986) (nonresident's telephone call, telegram and letter to Connecticut plaintiff did not constitute transaction of business within the meaning of section 52-59b(a)(1)). However, the existence of a contract along with substantial telephone and email communications related to the contractual relationship can be sufficient to constitute transaction of business in the forum state. See Caplan v. Stein, No. 3:08-cv-1731(CFD), 2009 WL 1407064 (D. Conn. May 18, 2009).

The partnership between Morinville and HSqd, along with the substantial communication between the parties, constitutes "transact[ing] any business" within the meaning of Connecticut's long-arm statute. Morinville entered into an on-going contractual relationship with HSqd by executing an oral partnership agreement to monetize Morinville's patents. The parties worked jointly to acquire the Dell Patents and develop and implement a monetization strategy. The parties communicated extensively as part of these joint efforts in furtherance of the partnership's interests. HSqd alleges that the substantial communication between the parties from January 2010 until January 2011 amounted to an "exchange of more than 400 emails and more than 360 telephone calls totaling in excess of 9,200 minutes and 153 hours." (Compl.¶ 28.) Finally, the oral partnership agreement contemplated profit-sharing and ultimate payment of shared proceeds to HSqd in Connecticut.

Because of this substantial communication between the parties arising out of an on-going contractual relationship, as well as the contemplation of the payment of shared profits to HSqd in Connecticut, this Court concludes that Morinville transacted business in Connecticut. See Caplan, at *1 (holding that between 50 and 100 telephone calls into Connecticut and between 50 and 100 emails between the parties, along with a contractual relationship, satisfied the "transacts any business" provision of Connecticut's long-arm statute). Therefore, Connecticut's long-arm statute allows this Court to exercise personal jurisdiction over Morinville.

    ii.  *Constitutional Due Process*

Once a court has determined that the Connecticut long-arm statute allows exercise of personal jurisdiction over a defendant, the court must ensure that this exercise does not offend the defendant's due process rights. The due process analysis consists of two parts. First, "a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist

minimum contacts between the defendant and the forum state." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (internal quotations omitted).  These contacts must be such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice," Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations omitted), and the defendant's actions must be "substantially connect[ed]" to the forum state and the alleged injuries must result from actions of the defendant "purposefully directed . . . at residents of the forum," Burger King Corp. v. Rudzewicz (Burger King), 471 U.S. 462, 472 (1985). Second, the court must determine if exercise of personal jurisdiction over the defendant is reasonable.  Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102, 113 (1987).  To do so, the court determines whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Burger King, 471 U.S. at 474.

      First, sufficient minimum contacts exist here.  If a defendant creates "continuing obligations" between himself and residents of the forum, Travelers Health Ass'n v. Virginia, 339 U.S. 643, 648 (1950), "he manifestly has availed himself of the privilege of conducting business there," Burger King, 471 U.S. at 476.  Morinville's "continuing obligations" to HSqd as part of the oral partnership are sufficient to establish "purposeful availment" and "minimum contacts" with Connecticut.  See Caplan, at *1.  Over the course of one year, Morinville and HSqd communicated through email and telephone conversations amounting, as previously noted, to an "exchange of more than 400 emails and more than 360 telephone calls totaling in excess of 9,200 minutes and 153 hours."  (Compl. ¶ 28.)  The substantial communications which Morinville initiated and received as part of the ongoing relationship amount to sufficient minimum contacts with Connecticut to satisfy the first aspect of the due process analysis.

Second, the exercise of personal jurisdiction over Morinville is reasonable. In assessing the reasonableness of the exercise of personal jurisdiction, a court must consider (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining convenient and effective relief in the forum state; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. Asahi, 480 U.S. at 113. Once there is a showing that the defendant has purposefully directed his activities at the forum state, the burden is on the defendant to make a compelling case showing other considerations that render jurisdiction unreasonable. Burger King, 471 U.S. at 477. Morinville has not made such a showing.

The exercise of personal jurisdiction over Morinville in Connecticut would not be overly burdensome to him. Although Morinville is a resident of Indiana, "because modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." Id. at 474 (internal quotations omitted). Therefore, exercise of personal jurisdiction over Morinville in Connecticut would not be highly burdensome to him.

The forum state's interest in having this matter litigated in its courts weighs in favor of HSqd. It is established that a state "generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Id. at 473. Because HSqd is a Connecticut company and alleges injuries caused by actions of an out-of-state individual, Connecticut certainly has an interest in having this matter litigated in Connecticut in order to protect its citizen.

HSqd has a strong interest in litigating this matter in Connecticut as that is the state in which the company retains its principal place of business and under whose state's laws the company is organized. In addition, HSqd's alleged injury occurred within this state. Therefore, HSqd's interest in obtaining convenient and effective relief in Connecticut weighs in favor of exercising personal jurisdiction over Morinville in Connecticut.

The interstate judicial system's interest in obtaining the most efficient resolution of controversies does not weigh in favor of either party. "In evaluating this factor, courts generally consider where witnesses and evidence are likely to be located." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 574 (2d Cir. 1996), cert. denied, 519 U.S. 1007 (1997). Because it is not clear what evidence the parties intend to seek in discovery or where such evidence is located, this factor does not weigh in favor of either party.

Finally, Morinville does not address the final factor concerning the shared interest in furthering fundamental substantive social policies, but exercising personal jurisdiction over Morinville in Connecticut does not appear to violate any relevant social policies.

Weighing these factors, this Court concludes that Morinville has not met his burden of making a compelling case showing other considerations that render exercising personal jurisdiction over him in Connecticut unreasonable. Exercising personal jurisdiction over Morinville in Connecticut would thus not offend his constitutional due process rights.

    b.    *Failure to State a Claim*

Morinville also argues that HSqd has alleged facts insufficient to state a claim upon which relief can be granted. This Court disagrees.

      *i.*  *Counts I and II: Breach of Partnership Agreement*

  HSqd asserts breach of contract claims against Morinville, alleging that Morinville breached the January 2010 partnership agreement formed between the parties.  (Compl. ¶¶ 1, 16.)  Morinville now argues that these claims are not plausible because the alleged partnership agreement violates the statute of frauds and is unenforceable.  This Court disagrees.

  In relevant part, Connecticut's statute of frauds states, "[n]o civil action may be maintained . . . unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (5) upon any agreement that is not to be performed within one year from the making thereof."  Conn. Gen. Stat. § 52-550(a).  This provision requires an agreement to be in writing only if the terms of that agreement prevent any possibility of completion within one year of the contract's creation.  C.R. Klewin, Inc. v. Flagship Properties, Inc. (Klewin), 600 A.2d 772, 777 (Conn. 1991); see also Burkle v. Superflow Mfg. Co., 78 A.2d 698, 701 (Conn. 1951) ("It is the law of this state, as it is elsewhere, that a contract is not within this clause of the statute unless its terms are so drawn that it cannot by any possibility be performed fully within one year."); Appleby v. Noble, 124 A. 717, 718 (1924).  Therefore, "an oral contract of indefinite duration is outside the statute of frauds, and may be enforced, but a contract which expressly provides for a limited duration beyond one year is within the proscriptive force of this statute."  McShane v. Mirand Grp., No. CV-89-0102922, 1992 WL 119193, at *3 (Conn. Super. May 15, 1992) (citing Klewin, 600 A.2d at 776-77); see also Jacobs v. Thomas, 600 A.2d 1378, 1382 (Conn. App. 1991) (explaining that "[c]ontracts of uncertain duration are simply excluded; the provision covers only those contracts whose performance cannot possibly be completed within a year." (emphasis in original)).

The oral partnership agreement between Morinville and HSqd to monetize the Patent Portfolio had no definite duration. Construing the allegations in the light most favorable to HSqd, it is at least plausible that, at the time the partnership agreement was created, the partnership agreement could have been performed within one year. Although Morinville argues the partnership would last for the remaining life of the patents, there is no allegation in the complaint that the agreement was to continue for the whole life of the patents. In addition, the agreement, as alleged in the complaint, does not expressly require HSqd's continued involvement for the full life of the patents. Therefore, the partnership agreement, as alleged in the complaint, does not violate the statute of frauds and HSqd has thus sufficiently pled facts that the partnership agreement is enforceable. Therefore, counts I and II survive the motion to dismiss.[4]

> ii.   Count III: Breach of Fiduciary Duty

HSqd also brings claims for breach of fiduciary duty based on Morinville's selling or transferring of the Dell Patents to a third party. Morinville argues that a fiduciary relationship cannot exist between the parties because an unenforceable partnership agreement does not give rise to any fiduciary duties. In Connecticut, "the only fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care." Conn. Gen. Stat. § 34-338(a). Therefore, because the partnership agreement does not violate the statute of frauds and survives the motion to dismiss, count III of the complaint, breach of fiduciary duty, is plausible and also survives the motion to dismiss.

---

[4] Because the Court determined that the statute of frauds does not apply to the partnership agreement, this opinion does not need to address HSqd's argument that if the statute of frauds renders the partnership agreement unenforceable, its application would be barred by the doctrines of part performance or equitable estoppel.

### iii. Count IV: Conversion

HSqd alleges that Morinville converted partnership property by selling the Dell Patents to a third party. Morinville argues that count IV, conversion, should be dismissed because the partnership had no property rights in the Dell Patents and, accordingly, HSqd cannot demonstrate the essential elements of conversion. This Court disagrees.

Conversion occurs when "one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." Deming v. Nationwide Mut. Ins. Co., 905 A.2d 623, 639 (Conn. 2006) (quoting Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 761 A.2d 1268, 1281 (Conn. 2000) (internal quotations omitted). Therefore, conversion is "some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm." Id. (internal quotations omitted). In this context, the term "owner" is one of "general application and includes one having an interest other than the full legal and beneficial title," and "varies from an absolute proprietary interest to a mere possessory right." Id. (internal quotations omitted).

Viewing the allegations in the light most favorable to HSqd, it is at least plausible that the partnership, and, by extension, HSqd, had some property interest in the Dell Patents. The complaint alleges that Morinville held title to the patents on behalf of the partnership, and, at some time between January 10, 2011 and May 17, 2011, assigned the patents to a third party. In doing so, HSqd alleges that Morinville converted the patents, partnership property, for his own benefit and to HSqd's exclusion. Therefore, it is plausible that, even though Morinville held the legal title, the partnership, and, by extension, HSqd, had some interest other than full legal and

beneficial title to the Dell Patents sufficient to qualify as an owner for the purposes of a conversion claim.

      iv.  *Counts V and VI: Unjust Enrichment*

In the alternative to counts I-IV, HSqd brings counts V and VI for unjust enrichment against Morinville claiming that Morinville "took the value and knowledge of HSqd for his own benefit" and sold and assigned the Dell Patents, the partnership's principal asset, to a third party. (Compl. ¶ 80.) Morinville asserts that HSqd suffered no "detriment" because it could not expect repayment unless and until the patent monetization program succeeded.

Unjust enrichment "applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract." Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co., 649 A.2d 518, 521 (Conn. 1994) (internal citations and quotations omitted). "Lack of a remedy under the contract is a precondition for recovery based upon unjust enrichment." Gagne v. Vaccaro, 766 A.2d 416, 424 (Conn. 2001). To succeed on an unjust enrichment claim, a plaintiff must show that "(1) the defendant was benefit[t]ed, (2) the defendant unjustly failed to pay the plaintiff for the benefits, and (3) the failure of payment was to the plaintiff's detriment." Id. at 428. In addition, the court must examine the facts of the case as alleged in the complaint and determine if it is "just or unjust, equitable or inequitable, conscionable or unconscionable, to apply the doctrine." Id.

HSqd has adequately pleaded unjust enrichment. First, HSqd asserts, and Morinville does not deny, that Morinville benefitted from his interaction with HSqd. Through the partnership, Morinville acquired title to the Dell Patents that he subsequently sold to a third party. (Compl. ¶¶ 78-80.) Thereby, HSqd adequately asserts that Morinville financially benefitted from his relationship with HSqd.

14

HSqd sufficiently pleads that Morinville failed to pay for this benefit to HSqd's detriment. After acquiring title to the Dell Patents, Morinville "walked" from the partnership. (Compl. ¶ 31.) Because the partnership could not execute the patent monetization program it developed, HSqd could not receive any financial benefits the partnership may have collected. In accordance with the partnership agreement, HSqd would have received thirty percent of the partnership's gross proceeds from all sources, as well as 150% of any money HSqd invested to support the patent monetization program. (Compl. ¶ 14.) Viewing the allegations in the light most favorable to HSqd, it is plausible that HSqd materially assisted Morinville in acquiring title to the Dell Patents, reasonably expected compensation for this assistance, and received none. Viewed in this light, the complaint adequately alleges that Morinville benefitted from the partnership with HSqd, unjustly failed to pay HSqd for these benefits, and the failure of payment was to HSqd's detriment. Therefore, HSqd has sufficiently alleged the elements of unjust enrichment and counts V and VI of the complaint survive the motion to dismiss.[5]

---

[5] The Court notes that, although HSqd casts count VI as a claim that Morinville unjustly enriched himself as distinct from the partnership, the partnership is not a party in this litigation. Morinville has not objected to count VI on this basis, and neither party has offered argument regarding the viability of this claim. Accordingly, the Court does not address this issue. Cf. Fed. R. Civ. P. 17 ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.").

## IV.     CONCLUSION

For the reasons stated herein, Defendant's Motions to Dismiss for Lack of Personal Jurisdiction [Doc. No. 13] and Failure to State a Claim [Doc. No. 14] are **DENIED**.


SO ORDERED.

Dated at Bridgeport, Connecticut, this 8th day of June, 2012.


_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE